Moncure, J.
In the will of Robert C. Wasley there is a clause in these words: “ Item. I loan to my daughter Mary A. Parker a negro girl named Celah, and 200 dollars in cash, which is her full proportion of all my estate.” And to the will a codicil is annexed in these words: “I loan to my daughter Mary Ann Parker 300 dollars more in lieu of a negro girl named Celah, which I loaned her in my will.” The question arising in this case is as to the meaniug of the word loan in these bequests. The Circuit court was of opinion that it imported a loan to the legatee for life, and not a gift in absolute property.
The testator evidently intended, by the use of the word loan, to qualify or limit the bequest in some manner, or to some extent; but in what manner, or to what extent, is the difficulty. He certainly did not use the word in its ordinary acceptation, as implying a mere loan of property at will or at sufferance, to be returned whenever required by his representative. He intended to give some interest in the property to the legatee. The loan, as it is called, is made by will; is part of the division which the testator wishes to be *479 made of his estate after his wife’s death; is to his child; and is expressed to he her full proportion of all his estate. These features of the case are either in consistent with the idea of a mere loan at sufferance, or tend strongly to show that a gift of the property to some extent, was intended. But to what extent is the ...... question which again recurs.
Having ascertained that a gift, to some extent at least, and not a mere loan at sufferance was intended, I think the gift is absolute, unless it be limited by the context of the will. At common law, for feudal reasons, words of inheritance were necessary to the creation by deed of an estate in fee simple in realty. In a will a fee simple would pass without such words, if the intention to pass a fee were indicated by the will. The statute law of Virginia has long since abolished the rule of the common law 5 and now declares that “ where any real estate is conveyed, devised, or granted to any person without any words of limitation, such devise, conveyance or grant, shall be construed to pass the fee simple, or other, the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear by the will, conveyance or grant.” Code p. 501, § 8; 1 Rev. Code 369, § 27. The rule of the common law was never applied to personalty; but always a gift of personalty without more, implied an absolute gift. Indeed, we are told that “anciently there could be no limitation over of a chattel, but a gift for life carried the absolute interest.” 2 Kent’s Com. 352. And though this ancient doctrine has been long obsolete, it yet seems to show that absolute estates in personalty were always favored by the common law; and that a gift of personalty was never held to be less than absolute, except when, per formam doni, it was plainly limited.
Then what is there in the context of the will to *480 limit the gift imported by the word loan in this bequest? It may be said that the word “loan” is used in three other clauses of the will 5 that wherever it is so used, it is plainly intended to give a limited estate ; and that, therefore, the same word should be regarded as having the same meaning in this bequest. But the answer is, that in all the other clauses in which the word is used, the estate is expressly limited to the loanee or donee, with remainder over. In the first clause he loans all his estate to his wife as long as she should remain his widow; and at her marriage or decease, directs it to be divided in the manner mentioned in the subsequent clauses. In the second clause he loans a certain plantation to five of his children as long as his dumb children (being three of the five) should live; and at their decease gives it to two of the five, (being the two that were not dumb.) In the eighth clause he loans to his dumb children their equal proportions as long as they should live, and at their decease gives it to four of his other children. I think if the testator had intended to give a limited and not an absolute interest in 500 dollars to his daughter Mary A. Parker, he would have expressly limited it to her with remainder over; as in the other instances in which the word “ loan” is used. The subject of the bequest was money; and yet he loans her the subject itself, and not the interest, as in the case of his wife; and loans it to her without interposing or providing for the appointment of a trustee, as in the case of his dumb children. By the first clause of his will he loans all his estate to his wife during her widowhood, aud at her marriage or decease, directed it. to be divided in the manner mentioned in the subsequent clauses. It is plain that he did not intend to die intestate as to any part of his estate; and that his wife’s marriage or decease was to be the period of division of his estate among all his other legatees, specific, pecuniary or re *481 siduary. After giving certain specific and pecuniary devises and bequests, he gives the residue of his estate to eight of his children, to be equally divided between them. I do not think the testator could have intended to embrace in this residue an estate in remainder in 500 dollars, dependent on the death of his daughter Mrs. Parker; and-therefore he must have died intestate as to that subject after her death, if he intended to give her only a life estate therein. He has carefully provided for various contingent or ulterior limitations, to take effect after the period of general division, at his wife’s marriage or decease; and would no doubt have made a similar limitation over of the 500 dollars at Mi’s. Parker’s decease, if he had intended to give her only a life estate therein.
Again it may be said that the testator uses the word “ give” in several of the clauses of his will; and that wherever he uses it, he plainly intends to make an absolute bequest. That he uses the word “ loan” in no ■ case, unless it be that of Mrs. Parker, where he does' not plainly intend to give a limited interest; and that therefore the word “ loan” in her case, ought to be construed as importing a limited, and not an absolute estate. This is an imposing view of the case and presents a difficulty, which, however, I think is not insuperable. The most that can be made of it is, that the testator had some meaning in the use of the word “ loan” in the bequest to Mrs. Parker, different from that which he had in the use of the word “ give,” in other clauses of his will. But what the meaning was it is impossible from the record to ascertain. We may conjecture that it was to give to Mrs. Parker, who was his only married daughter, a separate estate in her legacy, or to exempt it from liability for the debts of her husband; and that he supposed his object could be effected by making the gift in the form of a loan. But whatever his notion on this subject may have been, it *482 is enough to say that in my opinion there is nothing in the will to limit the duration of the estate given to Mrs. Parker. It is true there are no words of perpetutity annexed to the bequest to her; nor are there any annexed to those bequests, in which the word “ give” instead of “ loan” is used. In this respect they are alike. There is a very close resemblance in the terms of the bequests, standing side by side, to his daughter Mrs. Parker, and his son Thomas M. "Wasley. To the former he loans a negro girl “ and 200 dollars in cash, which is her full proportion of all his estate.” To the latter he gives a negro man, “and 200 dollars in cash, which is his full proportion of all his estate.’’ It would be difficult to place a different construction on these two gifts as to the duration of the estate given, and to regard the former as an estate for life, and the latter an absolute estate.
But if the testator intended to limit the duration of the estate given to Mrs. Parker, what is there in the will to fix that limitation for her life? It will not do to say that because other “ loans” in the will are limited for life, therefore this was intended to be for life. In fact, of the three other “ loans” made in the will, but one of them was for the lives of the loanees. One was a loan during widowhood; and the other per auter vie. "Why should one any more than another of these expressly limited loans, regulate the duration of that which is not so limited ? It will not do to say that the will must be construed most strongly against the testator, and therefore must be construed as giving an estate for the life of Mrs. Parker, which is the best limited estate she could have. I know of no such rule of construction as applied to wills. But if it were so applicable, the effect in this case would be to make her estate absolute. There is, however, a rule of construction applicable to wills, which is pertinent to this case, “ that an hem at law can only be disinherited by *483 express devise or necessary implication, and that implication has been defined to be snch a strong probability, that an intention to the contrary cannot be supposed.” 1 Jarm. on Wills 465. . If the gift to Mrs. Parker were construed to be a gift for life, she would be disinherited not only by implication, but by implication on implication. First, by implying an intention to give a limited and not an absolute estate; and secondly, by implying a limitation for life. There is not a word in the will on which the latter implication can be based. To sustain it, words must be imported into the will; and I know of no rule of law which will authorize such an importation. AH we can do is to construe the language of the testator .* we cannot add to it. His language gives or loans an estate to his daughter, and there stops. If he really intended to give or loan that estate for life only, the answer is voluit sed non dixit.
The first inclination of my mind was to reverse the decree and send the case back, in order that the extrinsic facts and surrounding circumstances might be brought into the case by depositions or the report of a commissioner. It seemed to me that the terms of the bequest presented a case of “ equivocation,” according to the language of Lord Bacon, and rendered it proper for the court to look for aid, in the construction of the will, to the surrounding circumstances of the case. But further reflection has satisfied me that that course is unnecessary, if not improper. For while I can well imagine a state of facts which would render the positions I have taken in the construction of the will by itself, perfectly impregnable, I can conceive of none which could so far weaken these positions as to make it necessary to abandon them. Suppose, for example, it were proved that at the date of the will, Mrs. Parker had a family of children; that no advancement had ever been made to her; that she *484 was the testator’s only married child ; that she was a dutiful child, between whom and her father the warmest affection subsisted; and that the portion given her by the will, considering the gift as absolute, was certainly not more than “ her full proportion of all his estate.” Could the mind resist the belief that whatever may have been his meaning in the use of the word “ loan” instead of the word “ give” in the bequest to her, he could not have intended thereby to disinherit her; and that if he had intended anything so unnatural, he would not have left his intention to mere implication, but would have expressed it in plain and unambiguous language, such as he used in every other instance in which he intended, to give a limited interest. On the other hand, if the facts supposed do not. exist, but the contrary, I do not perceive that the will would admit of any other construction than that which I have adopted, without such an interpolation of words as would in my judgment be wholly unwarrantable.
I am, therefore for reversing the decree with costs, and dismissing the bill.
Allen and Lee, Js. concurred in the opinion of Moncure, J.
Daniel and Samuels, Js. thought that the decree should be amended so as to give the legatee the money for the life of the wife, and requiring security for its return at her death. And being thus amended, should be affirmed.
Decree reversed with costs, and bill dismissed.